**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005885
16-NOV-2016
09:18 AM**

NO.  CAAP-13-0005885

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ANGELINA U. LARDIZABAL, Claimant-Appellant/Cross-Appellee,
v. NO KA OI PRODUCERS, INC., Employer-Appellee/Cross-Appellee,
and FIRST INSURANCE COMPANY OF HAWAII, LTD., Insurance Carrier-
Appellee/Cross-Appellee, and SPECIAL COMPENSATION FUND,
Appellee/Cross-Appellant

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2012-021; (2-06-45436))

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Claimant-Appellant Angelina U. Lardizabal (**Lardizabal**)
appeals from the Labor and Industrial Relations Board's (**LIRAB**)
Decision and Order, filed on November 27, 2013 (**Decision and
Order**).  Lardizabal challenges, *inter alia*, the LIRAB's denial of
permanent total disability (**PTD**) benefits under the odd-lot
doctrine.  Appellee-Cross-Appellant Special Compensation Fund
(**SCF**) cross-appeals from the LIRAB's Decision and Order, claiming
that the LIRAB erroneously apportioned permanent partial
disability (**PPD**) benefits between Employer-Appellee No Ka Oi
Producers, Inc. (**No Ka Oi**) and the SCF.

The LIRAB determined that Lardizabal was entitled to 16% PPD benefits for her left hand, $500.00 for disfigurement and that the PPD award should be apportioned with the SCF. In doing so, the LIRAB: (1) affirmed the Director of the Department of Labor and Industrial Relations' (**Director's**) award of $500.00 for disfigurement, and the denial of PTD benefits in the October 25, 2011 decision; (2) modified the Director's 16% PPD award in the October 25, 2011 decision;[1] (3) reversed the Director's denial of No Ka Oi's request for contribution with the SCF in the October 25, 2011 decision; and (4) vacated the Director's December 5, 2011 amended decision.

Lardizabal raises three points of error on appeal, contending that the LIRAB erred in:

(1) finding that Lardizabal did not establish a *prima facie* case that she fell within the odd-lot category;

(2) finding that suitable employment was regularly and continuously available to Lardizabal, despite her limitations; and

(3) finding that Lardizabal's work-related injury did not render her permanently totally disabled within the odd-lot category.

Lardizabal also argues that she is entitled to a "PPD award of 40% impairment of the hand, plus 5% for residuals for a

---

[1] In its October 25, 2011 decision, the Director concluded that Lardizabal is entitled to an award of 16% PPD for her left hand. However, the Director ordered that No Ka Oi "pay to [Lardizabal] weekly compensation of $166.67 for 13% [PPD] of the hand[.]" In its December 5, 2011 amended decision, the Director concluded that Lardizabal "is entitled to an award of 16% PPD of the left hand and certain disfigurement."

total of 45% impairment of the hand," 25% PPD of the ring finger, and $1,000.00 for disfigurement.

The SCF raises six points of error on appeal, contending that:

(1) the LIRAB applied the wrong standard by treating Lardizabal's injury as the result of an accident, rather than a cumulative trauma;

(2) the LIRAB clearly erred when it credited "medical apportionments" that did not meet the legal requirements of Hawaii Revised Statutes (HRS) § 386-33 (2015);

(3) the LIRAB clearly erred when it credited permanent preexisting disabilities that had the potential to fluctuate over time;

(4) The LIRAB clearly erred in crediting the opinions of doctors who made incorrect assumptions regarding work experiences;

(5) The LIRAB erred when it relied on clearly erroneous findings of fact (FOFs) not relevant to the issue of legal apportionment to conclude that apportionment of the PPD with the SCF was appropriate; and

(6) The LIRAB erred in concluding that Lardizabal had a preexisting impairment sufficient to establish apportionment pursuant to HRS § 386-33.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the parties' contentions as follows:

Lardizabal's Appeal

(1) Lardizabal contends that she is entitled to PTD benefits under the odd-lot category because "she is old (68), poorly educated, [has] no transferable skills, only has manual labor experiences with the use of both hands, and has severe disability to use both hands."[2] Lardizabal appears to challenge FOF 12, which states in pertinent part, the LIRAB "finds that [Lardizabal] failed to make the *prima facie* case that she fell within the odd lot category."

Under the odd-lot doctrine, "where an employee receives a work-related permanent partial disability which combined with other factors such as age, education, experience, etc., renders him, in fact, unable to obtain employment, he is entitled to be treated as being permanently totally disabled." Tsuchiyama v. Kahului Trucking & Storage Inc., 2 Haw. App. 659, 660-61, 638 P.2d 1381, 1382 (1982). The employee has the burden of establishing a *prima facie* case that he or she falls within the odd-lot category. Id. at 661, 638 P.2d at 1382 (citation omitted). Furthermore,

> [i]f the evidence of degree of obvious physical impairment, coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer

---

[2] Lardizabal argues that her right hand disability should be a factor in establishing a *prima facie* case under the odd-lot doctrine. The LIRAB determined that the "Director only determined the compensability of [Lardizabal's] left hand; therefore, the compensability of any alleged injury to [Lardizabal's] right hand is not before the [LIRAB]. The [LIRAB] makes no finding with respect to [Lardizabal's] right hand." Thus, the LIRAB did not reach the issue of whether Lardizabal sustained a work-related permanent partial disability to her right hand in its Decision and Order. As such, we will not address the extent of Lardizabal's right hand disability. Kalapodes v. E.E. Black, Ltd., 66 Haw. 561, 565, 669 P.3d 635, 637 (1983) (citing Demond v. Univ. of Haw., 54 Haw. 98, 103, 503 P.2d 434, 437 (1972)).

to show that some kind of suitable work is regularly and
continuously available to the claimant.

Yarnell v. City Roofing Inc., 72 Haw. 272, 275, 813 P.2d 1386,
1388 (1991) (citation omitted).

In Tsuchiyama, claimant injured his back while at work.
Tsuchiyama, 2 Haw. App. at 660, 638 P.2d at 1382. Claimant was
"off the job for almost three years, during which time his back
was operated on for surgical excision of a disk." Id. In
addition, "[o]rthopedic surgeons evaluated the permanent
disability of the whole man at between 16% and 25%." Id. This
court concluded that given the claimant's age, education,
difficulty with the English language, limp, and limitations of
motion, the LIRAB was not clearly erroneous in finding that "no
regular gainful employment existed for [the Claimant] in his
present condition." Id. at 662, 638 P.2d at 1383.

Here, in reaching its determination that Lardizabal had
"failed to make the prima facie case that she fell within the odd
lot category" in FOF 12, the LIRAB credited the impairment
ratings of Drs. Brian Y. Mihara (Dr. Mihara), Lance A. Yokochi
(Dr. Yokochi), Peter E. Diamond (Dr. Diamond), Lorne K. Direnfeld
(Dr. Direnfeld), and Christopher Brigham (Dr. Brigham). Dr.
Mihara opined Lardizabal's impairment with regard to the left
hand as "7% of the hand as per Hawaii Convention." Dr. Yokochi
opined Lardizabal's impairment as "3% impairment of the hand for
the left carpal tunnel syndrome (wrist condition) and 7%
impairment of the left ring finger for her left ring finger
trigger finger condition." Dr. Diamond opined Lardizabal's
impairment as "10% for the sensory change combined with 2% for

motor change, for a total of 12% impairment, upper extremity." Dr. Direnfeld opined Lardizabal's impairment as "sensory loss (10%) and motor loss (2%)" for a total of 12% impairment of the upper extremity. Dr. Brigham agreed with Drs. Diamond and Direnfeld's impairment rating of 13% for Lardizabal's left carpal tunnel syndrome. Based on the minimal degree of physical impairment indicated in Drs. Mihara, Yokochi, Diamond, Direnfeld, and Brigham opinions, the LIRAB determined that Lardizabal "failed to make the *prima facie* case that she fell within the odd-lot category."

In determining whether a claimant satisfied his or her burden of proof, the odd-lot doctrine requires consideration of "physical impairment coupled with other facts such as claimant's mental capacity, education, training, [and] age." <u>Yarnell</u>, 72 Haw. at 275, 813 P.3d at 1388. Furthermore, "there is a presumption that, if claimant suffers physically, and bears the additional characteristics, then he [or she] has proved the *prima facie* case." <u>Id.</u> The LIRAB noted that Lardizabal was 67 years old, and found that her primary language was Ilocano and that she spoke little English. The LIRAB also found that Lardizabal did not finish high school, and "did not attend any other formal education, specialized training, or vocational training." Given her physical impairment, age, lack of education, work experiences, and difficultly with English, it appears that Lardizabal established a *prima facie* case that she fell within the odd-lot doctrine. Thus, the LIRAB's FOF 12 was clearly

erroneous.  See Igawa v. Koa House Rest., 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001) (citations and brackets omitted).

(2)  Once a claimant has established a *prima facie* case, then the employer has the "burden to prove the existence of regular suitable employment."  Yarnell, 72 Haw. at 275, 813 P.2d at 1388.  "Case law clearly establishes that it is a question of fact as to whether a person falls into an odd-lot category[,]" and "shifting the burden of proof is a question of law."  Id. at 276, 813 P.2d at 1389 (citation omitted).  The question of whether an employer had "either failed or succeeded in its burden of proof that there [is] suitable employment" is a factual question.  Id.

As Lardizabal established a *prima facie* case that she fell within the odd-lot doctrine, the burden shifted to No Ka Oi to prove the existence of regular suitable employment.  Id. at 275, 813 P.2d at 1388.  In FOF 13, the LIRAB found that "[w]ith respect to [Lardizabal's] vocational prospects in the labor market, the [LIRAB] finds the opinions of Ms. Havre credible and persuasive and credits them over those of Ms. Hamano."  In a report dated October 28, 2012, Havre conducted a transferable skills analysis that focused on "the work fields of the sewing machine operator, sandwich maker, homemaker and child monitor. Of these jobs, the hostess, ticket taker and parking lot attendant job titles were identified[.]"  Havre noted that Lardizabal is "able to learn and effectively improve remedial English language skills as demonstrated by her graduation from

7

high school while in the Phillippines,"[3] and is able to "learn and apply new job skills via on-the-job training as evidenced by her successful advancement to a supervisory capacity that involved training employees while working in the Philippines." Havre concluded that "Lardizabal is not permanently and totally disabled, and should be able to return to work again[.]"

Although the LIRAB credited Havre's opinions, the LIRAB failed to make factual findings indicating whether No Ka Oi "either failed or succeeded in its burden of proof that there was suitable employment[.]" Yarnell, 72 Hawai'i at 276, 813 P.3d at 1389. The LIRAB "must make its findings reasonably clear. The parties and the court should not be left to guess, with respect to any material question of fact, or to any group of minor matters that may have cumulative significance, the precise finding of the agency." In re Hawaiian Tel. Co., 54 Haw. 663, 668, 513 P.2d 1376, 1379 (1973) (quoting In re Terminal Transp. Inc., 54 Haw. 134, 139, 504 P.2d 1214, 1217 (1972)). Thus, this court will not speculate as to whether No Ka Oi "either failed or succeeded in its burden of proof that there was suitable employment[.]" Yarnell, 72 Hawai'i at 276, 813 P.3d at 1389. Accordingly, we remand this case with instructions that the LIRAB determine whether No Ka Oi proved the existence of regular suitable employment.

(3) It appears that Lardizabal is challenging LIRAB's Conclusion of Law (COL) 1, which states, inter alia, the LIRAB

---

[3] Lardizabal testified that she did not graduate from high school; Havre's testimony apparently was based on a job application completed by Lardizabal that represented that she graduated from high school.

"concludes that [Lardizabal] is neither permanently totally disabled on a medical basis nor is she permanently totally disabled on an odd-lot basis." In light of our conclusions that Lardizabal established a *prima facie* showing on her odd-lot claim and that the LIRAB failed to make the necessary factual findings concerning whether No Ka Oi met its burden of proof, we must vacate the conclusion stated in COL 1.

(4) Lardizabal argues that she "currently has a combined sensory deficit or pain and motor loss deficit due to carpal tunnel syndrome, equivalent to 40% permanent impairment of the hand." In support of her argument, Lardizabal contends that Dr. Diamond erroneously interpreted the American Medical Association (**AMA**) Guides. Thus, Lardizabal appears to challenge FOF 4 in the LIRAB's Decision and Order, which states in relevant part that the LIRAB "credits Dr. Diamond's opinions that [Lardizabal] sustained permanent impairment and that apportionment was appropriate due to [Lardizabal's] pre-existing condition."

Under Hawaii Administrative Rule (**HAR**) § 12-10-21, "[i]mpairment rating guides issued by the American Medical Association . . . may be used as a reference or guide in measuring a disability." Thus, while the AMA Guides are a helpful tool in determining disability, the LIRAB is not bound by them. Cabatbat v. Cty of Haw., Dep't. of Water Supply, 103 Hawaiʻi 1, 6, 78 P.3d 756, 761 (2003). The Hawaiʻi Supreme Court has recognized that "physicians must be allowed to draw on their medical expertise and judgment to evaluate the numerous factors

9

relating to an individual's impairment rating and to determine which [AMA Guides] would be most appropriate to apply." Duque v. Hilton Hawaiian Vill., 105 Hawai'i 433, 435, 98 P.3d 640, 642 (2004).

Based on a physical examination and interpretation of the AMA Guides, Dr. Diamond opined Lardizabal's impairment as "10% for the sensory change combined with 2% for motor change, for a total of 12% impairment, upper extremity." Lardizabal failed to present evidence at the LIRAB hearing to dispute Dr. Diamond's impairment rating. Viewing the reliable, probative, and substantial evidence, with the LIRAB determining credibility, we conclude that FOF 4 was not clearly erroneous. Igawa, 97 Hawai'i at 406, 38 P.3d at 574; Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001).

Second, Lardizabal argues that she is entitled to 25% PPD of the ring finger. In support of her argument, Lardizabal challenges Dr. Yokochi's clinical findings and interpretation of the AMA Guides. Thus, it appears that Lardizabal challenges FOF 3 in the LIRAB's Decision and Order, which states in pertinent part that the LIRAB "credits Dr. Yokochi's opinions, including his opinion that [Lardizabal] sustained permanent impairment[.]"

Dr. Yokochi evaluated Lardizabal's range of motion for her left wrist and ring finger using the AMA Guides. In a report dated June 5, 2008, Dr. Yokochi wrote that Lardizabal's sensory deficit is "greater than 15 mm two-point discrimination in all fingertips, except for her left small finger." Based on Lardizabal's clinical status and the reports of Drs. Richard

Mengato, Mihara, and Antonio B. Cordero, Dr. Yokochi was not able to determine Lardizabal's sensory impairment. As discussed, "physicians must be allowed to draw on their medical expertise and judgment to evaluate the numerous factors relating to an individual's impairment rating and to determine which [AMA Guides] would be most appropriate to apply." Duque, 105 Hawaiʻi at 435, 98 P.3d at 642. Lardizabal failed to present evidence at the LIRAB hearing to dispute Dr. Yokochi's clinical findings and interpretation of the AMA Guides. Viewing the reliable, probative, and substantial evidence, with the LIRAB determining credibility, we conclude that FOF 3 was not clearly erroneous. Igawa, 97 Hawaiʻi at 406, 38 P.3d at 574; Tamashiro, 97 Hawaiʻi at 92, 34 P.3d at 22.

Lastly, Lardizabal contends that she is "entitled to $1,000.00 for disfigurement, which includes, scarring, pseudo clawing, and locking of the ring finger." However, Lardizabal present no discernable argument regarding this contention. Therefore, we conclude that this contention is without merit. See, e.g., Kakinami v. Kakinami, 127 Hawaiʻi 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citation omitted).

SCF's Cross-Appeal

An employer may apportion permanent disability benefits with the SCF under HRS § 386-33, which states in relevant part:

> (a) Where prior to any injury an employee suffers from a previous permanent partial disability already existing prior to the injury for which compensation is claimed, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of employment, to result in a greater permanent partial disability or in permanent total disability or in death, then weekly benefits shall be paid as follows:

> (1)   In cases where the disability resulting from the injury combines with the previous disability to result in greater permanent partial disability the employer shall pay the employee compensation for the employee's actual permanent partial disability but for not more than one hundred four weeks; the balance if any of compensation payable to the employee for the employee's actual permanent partial disability shall thereafter be paid out of the special compensation fund; provided that in successive injury cases where the claimant's entire permanent partial disability is due to more than one compensable injury, the amount of the award for the subsequent injury shall be offset by the amount awarded for the prior compensable injury;
>
> . . . .
>
> (b) Notwithstanding subsection (a), where the director or the appellate board determines that the previous permanent partial disability amounted to less than that necessary to support an award of thirty-two weeks of compensation for permanent partial disability, there shall be no liability on the special compensation fund and the employer shall pay the employee or the employee's dependents full compensation for the employee's permanent partial or total disability or death.

The supreme court interpreted HRS § 386-33 in <u>Bumanglag v. Oahu Sugar Co.</u>, 78 Hawai'i 275, 892 P.2d 468 (1995), stating:

> [I]n order to obtain an apportionment with SCF, Employer must first prove three conditions: (1) that Claimant suffered from a preexisting permanent partial disability; (2) that the preexisting permanent partial disability was capable of supporting an award of thirty-two weeks of compensation; and (3) that the preexisting disability and the subsequent work-related injury combined into a greater present disability.
>
> . . . .
>
> Subsection (b) of HRS § 386-33 authorizes the director or the [LIRAB] to apportion liability with SCF if the Director or [LIRAB] determines that the previous permanent partial disability amounted to an award of thirty-two weeks of compensation.

<u>Id.</u> at 280, 892 P.2d at 473 (footnote omitted).

In the instant case, the LIRAB concluded that apportionment with the SCF was appropriate "given the extensive preexisting impairment to [Lardizabal's] left hand which was aggravated by conditions at work and found compensable."   Thus, it appears that the LIRAB concluded that No Ka Oi proved the

12

three Bumanglag conditions.  Id. at 280, 892 P.2d at 473.  The SCF argues that No Ka Oi failed to prove the three Bumanglag conditions.

(1)  In its first point, the SCF argues that the LIRAB erred when it credited various medical professionals who all relied on evidence that Lardizabal developed carpal tunnel syndrome while working for No Ka Oi to establish a disability that pre-existed the workplace carpal tunnel injury.  In other words, the SCF contends that Lardizabal's carpal tunnel syndrome developed during the course of her employment with No Ka Oi, and thus is not a preexisting disability under HRS § 386-33.

The Hawai'i Legislature enacted HRS § 386-33 in order to "encourage the hiring of persons already handicapped by preexisting permanent partial disabilities.  The mechanism by which such encouragement was to be accomplished was to limit the liability of an employer of a previously handicapped worker who suffered a subsequent work-related injury to compensation for the subsequent injury alone."  Crawford v. Fin. Plaza Contractors, 64 Haw. 415, 423, 643 P.3d 48, 53 (1982).[4]  As recognized by the supreme court, "the Crawford decision necessitated the conclusion that the permanent partial disability not merely preexist the subsequent injury but preexist employment[.]"  Survivors of

_____

[4]    Although Crawford involved apportionment of death benefits, the supreme court noted that HRS § 386-33 "provides for the apportionment of whatever benefits our workers' compensation law otherwise provides where the compensable event results from a combination of preexisting disability and subsequent work-related injury."  Crawford, 64 Haw. at 424 n.10, 643 P.2d at 54 n.10 (emphasis added).  Thus, the principles underlying Crawford apply to death benefits as well as to disability benefits.

Medeiros v. Maui Land & Pineapple Co., 66 Haw. 290, 294, 660 P.2d 1316, 1319 (1983).

In Medeiros, the claimant "had suffered from severe cardiovascular disease, had suffered a severe myocardial infarction two to six weeks prior to his death, and had suffered a myocardial infarction, which resulted in his death[.]" Id. at 292, 660 P.2d at 1318. At the LIRAB hearing, two doctors testified that they were not able to determine when claimant developed his cardiovascular disease. Id. at 294-95, 660 P.2d at 1320. Furthermore, a review of claimant's medical records indicated that he was not suffering from heart disease during the course of his employment. Id. at 295, 660 P.2d at 1320. Based on the foregoing, the supreme court was unconvinced that the claimant's disease preexisted his employment. Id. at 294-95, 660 P.2d at 1320. Thus, the supreme court affirmed the LIRAB's decision to deny apportionment. Id. at 296, 660 P.2d at 1320.

HRS § 386-1 (2015) defines disability as a "loss or impairment of a physical or mental function." In the instant case, it appears that the LIRAB identified the impairment to Lardizabal's left hand as her preexisting permanent partial disability. This case is distinguishable from Mederios because there is evidence indicating that Lardizabal's disability existed prior to her employment with No Ka Oi. Dr. Mihara opined that Lardizabal's "highly repetitive, high volume" work activity at No Ka Oi could reasonably have worsened her carpal tunnel syndrome. Dr. Mihara noted that Lardizabal's carpal tunnel syndrome injury was partially preexisting prior to her employment with No Ka Oi.

Dr. Yokochi wrote that Lardizabal "worked in a garment factory for 20 years in the Philippines, when she possibly had first onset of her symptoms." Dr. Yokochi noted that "there is indication in the medical records of prior symptoms dating even to the time that [Lardizabal] lived in the Philippines." Dr. Direnfeld noted that "there is unequivocal evidence that the condition of carpal tunnel syndrome predated the 1/1/05 administratively used injury date." Dr. Brigham wrote that "[i]f one identifies 'cumulative trauma' as a cause, this would [relate] both to her 'January 1, 2005 injury' and to the effects of prior work in the garment industry and likely non-occupational activities[.]" Dr. Diamond opined that "it would be reasonable to conclude that [Lardizabal's] work activities did aggravate and accelerate the carpal tunnel process, but are not wholly responsible for the ongoing symptoms."

Based on the foregoing, there is evidence indicating that Lardizabal's disability existed prior to her employment with No Ka Oi. Despite the SCF's arguments to the contrary, there is no evidence in the record indicating that Drs. Yokochi, Diamond, Direnfeld, and Brigham relied on evidence that Lardizabal developed carpal tunnel syndrome while working for No Ka Oi in determining that Lardizabal suffered from a preexisting disability. We decline to disturb LIRAB's assessment of the credibility of the witnesses and the weight it gives to the evidence. Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22. Therefore, we cannot conclude that the LIRAB erred in crediting the opinions of Drs. Yokochi, Diamond, Direnfeld, and Brigham.

15

(2)   SCF argues that the LIRAB clearly erred when it credited "'medical apportionments' without first determining whether the medical opinions met the requirements of HRS § 386-33." The SCF challenges Drs. Yokochi, Diamond, Direnfeld, and Brigham's opinions in FOFs 3, 4, 6, and 8.

Citing Akamine v. Hawaiian Packing & Crating Co., 53 Haw. 406, 495 P.2d 1164 (1972), the SCF argues that "while it may be medically sound to perform a 'medical apportionment,' the medical apportionment would not establish legal apportionment unless it also satisfied the requirements of HRS § 386-33." In Akamine, claimant collapsed while pushing a hand truck at work. Id. at 407, 495 P.2d at 1165. Shortly thereafter, claimant died from acute coronary insufficiency. Id. An expert testified that there was no connection between claimant's death and employment based on his belief that "heart diseases originate early in life and [Claimant's] pre-existing pathological condition was the sole cause of death." Id. at 410-11, 495 P.2d at 1167 (footnotes omitted). The supreme court stated that:

> To allow a medical expert to give his opinion as to whether legal causation existed in a particular case could lead to an unjust result. For "a medical man may give a generalized opinion that there was no connection between an incident at work and a heart attack, and, in his own mind, may mean thereby that a pre-existing pathological condition was the overwhelming factor in bringing about the attack and that the part played by the work was insignificant. But, while it may be sound medically to say that the work did not 'cause' the attack, it may be bad law, because, in general, existing law treats the slightest factor of aggravation as an adequate 'cause'."

Id. at 410, 495 P.2d at 1167 (quoting DeFries v. Ass'n of Owners). However, the supreme court has recognized that Akamine

16

"does not stand for, and we do not uphold, the proposition that medical opinions must address or rebut the legal presumption imposed by statute." Korsak v. Haw. Permanente Med. Grp., 94 Hawai'i 297, 308, 12 P.3d 1238, 1249 (2000). Accordingly, despite the SCF's arguments to the contrary, a doctor's opinion regarding medical apportionment does not have to address or rebut the requirements listed in HRS § 386-33. As such, we are not persuaded by SCF's reliance on Akamine.

In the instant case, Drs. Yokochi, Diamond, Direnfeld, and Brigham based their respective impairment ratings on the AMA Guides. The AMA Guides describe apportionment as a "distribution or allocation of causation among multiple factors that caused or significantly contributed to the injury or disease and resulting impairment. The factor could be a preexisting injury, illness, or impairment." Gunnar B.J. Andersson, Linda Cocciarella, Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment 11 (5th ed. 2000). Furthermore, the "apportionment analysis must consider the nature of the impairment and its possible relationship to each alleged factor, and it must provide an explanation of the medical basis for all conclusions and opinions." Id. at 12. As discussed, "physicians must be allowed to draw on their medical expertise and judgment to evaluate the numerous factors relating to an individual's impairment rating and to determine which [AMA Guides] would be most appropriate to apply." Duque, 105 Hawai'i at 435, 98 P.3d at 642.

Dr. Yokochi concluded that he would "apportion 50% of the final impairment due to the industrial injury dated 01/01/05 for recording purposes and 50% of the final impairment to all of her pre-existing factors, including her prior occupational history, female gender, and age." Dr. Diamond apportioned 50% of Lardizabal's impairment to a preexisting condition. Dr. Direnfeld agreed with the apportionments provided by Drs. Yokochi and Diamond. As such, Dr. Direnfeld noted that "there would be 6.5% impairment of the left hand attributable to the effects of the 1/1/05 industrial accident." Dr. Brigham concluded that 2% of the impairment was apportionable to the January 1, 2005 injury, and 11% of the impairment predated the January 1, 2005 injury. As discussed above, it was within LIRAB's discretion to decide what weight to give Drs. Yokochi, Diamond, Direnfeld, and Brigham's opinions. Based on the record in this case, we cannot conclude that the LIRAB erred in crediting the opinions of Drs. Yokochi, Diamond, Direnfeld, and Brigham.

(3) SCF argues that the LIRAB clearly erred when it credited permanent preexisting disabilities that had the potential to fluctuate over time. SCF argues that a permanent preexisting disability "cannot change as a claimant's condition following the work injury improves or worsens." SCF cites no legal authority in support of this proposition and we find none.

(4) SCF argues that the LIRAB clearly erred in crediting the opinions of doctors who made incorrect assumptions regarding Lardizabal's prior work experience in the Philippines.

18

In particular, the SCF challenges the opinions of Drs. Mihara and Yokochi in FOFs 2 and 3. The SCF also argues that Drs. Mihara and Yokochi's opinions contradicted Lardizabal's testimony. As discussed above, upon our review of the record, we decline to disturb LIRAB's assessment of the credibility of the witnesses and the weight of the evidence. We cannot conclude that the LIRAB erred in crediting the opinions of Drs. Mihara and Yokochi.

(5 & 6) The SCF's fifth and sixth points of error are related. In its fifth point of error, the SCF argues that the LIRAB erred when it "relied on clearly erroneous [FOFs] not relevant to the issue of legal apportionment to conclude that apportionment of the [PPD] with the SCF was appropriate." In its sixth point of error, the SCF argues that the LIRAB erred in concluding that Lardizabal had a preexisting impairment sufficient to establish apportionment under HRS § 386-33. In both points, the SCF challenges COL c, which states in relevant part:

> The [LIRAB] having credited the impairment opinions of the various physicians noted herein above, including the opinion of Dr. Direnfeld, apportionment of the permanent partial disability with the [SCF] is appropriate under the workers' compensation statute given the extensive preexisting impairment to [Lardizabal's] left hand which was aggravated by conditions at work and found compensable.

"A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Igawa, 97 Hawai'i at 406, 38 P.3d at 574 (citation omitted).

19

In Bumanglag, the issue before the court was whether the "[LIRAB] was clearly erroneous in finding that the Claimant did not suffer from a preexisting permanent partial disability capable of supporting an award of thirty-two weeks compensation." Bumanglag, 78 Hawai'i at 280, 892 P.2d at 473. The supreme court noted that the purpose of the thirty-two week threshold was "to significantly reduce the total number of cases in which the [SCF] is required to participate[.]" Id. at 280 n.3, 892 P.2d at 473 n.3 (citing S. Stand. Comm. Rep. No. 215, in 1982 Senate Journal, at 1041) (brackets in original). In Bumanglag, Dr. John Hendrickson (Dr. Hendrickson) opined that 20% to 25% of claimant's overall impairment was attributable to preexisting congenital defects. Id. at 278, 892 P.2d at 471. In its decision, the LIRAB stated:

> We find no evidence in the record to conclude that Claimant had a pre-existing permanent partial disability sufficient to support an award of thirty-two (32) weeks of compensation, pursuant to HRS § 386-33. In this case we are unable to credit Dr. [Hendrickson's] July 1, 1991 opinion. Even if we were to accept Dr. Hendrickson's opinion as to Claimant's preexisting impairment for his low back condition, and apply it to the highest permanent impairment rating for the lumbar region (11% of the whole person), 20 to 25% of 11% would provide, at most, 2.75% pre-existing permanent partial disability of the whole person. Permanent partial disability of 2.75% of the whole person is equal to 10.71 weeks of compensation at Claimant's weekly benefits rate of $233.05. It has not been shown that Claimant has a pre-existing permanent partial disability of 32 weeks of compensation necessary to warrant apportionment with SCF.

Id. (ellipses omitted). Accordingly, the supreme court held that the LIRAB did not err when it concluded that apportionment with the SCF was not appropriate. Id. at 280, 892 P.2d at 473.

No Ka Oi argues that the "substantial, credible and persuasive evidence in the record also shows that the preexisting [PPD] was capable of supporting an award of thirty-two weeks compensation[.]" In particular, No Ka Oi contends that the "LIRAB's decision to credit the undisputed evidence of Drs. Yokochi, Diamond, Direnfeld and Brigham was not clearly erroneous." Dr. Diamond apportioned 50% of Lardizabal's 12% impairment to a preexisting condition. Dr. Direnfeld opined that "there would be 6.5% impairment of the left hand attributable to the effects of the 1/1/05 industrial accident." Dr. Brigham concluded that 11% of Lardizabal's impairment predated the January 1, 2005 injury. Under the formula proposed by No Ka Oi, Drs. Diamond, Direnfeld, and Brigham's impairment ratings and apportionment opinions support an award over thirty-two weeks of compensation.[5] However, Dr. Yokochi apportioned 1.5% impairment to preexisting factors. Under the formula proposed by No Ka Oi, Dr. Yokochi's preexisting impairment rating does not support an award capable of thirty-two weeks of compensation.[6] Thus, the LIRAB credited impairment ratings and apportionment opinions that

---

[5] In relying on Dr. Brigham's preexisting impairment rating of 11%, No Ka Oi avers that "$622.00 state average weekly wage for 2005 x 244 weeks for hand impairment x 0.11 preexisting impairment = $16,694.48 divided by $166.67 weekly compensation rate = 100.1648 weeks of compensation." No Ka Oi asserts that "[u]tilizing the pre-existing impairment of 6.5% [from Drs. Diamond and Direnfeld], Employer/Carrier still met the 32-week threshold set forth in HRS § 386-33 ($622.00 state average weekly wage for 2005 x 244 weeks for hand impairment x 0.11 preexisting impairment = $9864.92 divided by $166.67 weekly compensation rate = 59.1883 weeks of compensation)."

[6] Under No Ka Oi's proposed formula, $622.00 state average weekly wage multiplied by 244 weeks of hand impairment, multiplied by 0.015 preexisting impairment equals $2,276.52. Additionally, $2,276.52 divided by $166.67 weekly compensation rate equals to 13.6588 weeks of compensation.

both supported and refuted the conclusion that No Ka Oi proved the second Bumanglag condition. See Bumanglag, 78 Hawai'i at 280, 892 P.2d at 473. Accordingly, we must conclude that the LIRAB's determination that Lardizabal's PPD award should be apportioned is clearly erroneous. See In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000) ("[A] mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made."). Under HRS § 91-14(g) (2012), we vacate the Decision and Order with regard to the issue of apportionment, and remand with instructions that the LIRAB clarify whether No Ka Oi proved that Lardizabal's preexisting PPD supported an award of thirty-two weeks of compensation.

For these reasons, we vacate the LIRAB's November 27, 2013 Decision and Order, and remand to the LIRAB to, *inter alia*, make a factual determination of whether No Ka Oi proved the existence of regular suitable employment, and clarify whether No

Ka Oi proved that Lardizabal's preexisting PPD supported an award of thirty-two weeks of compensation.

DATED: Honolulu, Hawaiʻi, November 16, 2016.

On the briefs:

Alex M. Sonson,
for Claimant-Appellant/
 Cross-Appellee.

Gary N. Kunihiro,
Shawn L.M. Benton,
(Leong Kunihiro Lezy & Benton)
for Employer-Appellee/
 Cross-Appellee and Insurance
 Carrier-Appellee/Cross-Appellee.

Frances E.H. Lum,
Staci I. Teruya,
Deputy Attorneys General,
for Appellee/Cross-Appellant.

Presiding Judge

Associate Judge

Associate Judge

23